# 97 DTA 157

## TRIBUNAL DE CIRCUITO DE APELACIONES
## CIRCUITO REGIONAL DE SAN JUAN

BANCO POPULAR DE PUERTO RICO
Apelado

v.

FELIX A. PELLICIER-FIGUEROA, MARIA DEL C. TOSSAS-FLORES Y
LA SOCIEDAD LEGAL DE GANANCIALES COMPUESTA POR AMBOS
Apelantes

Núm. KLAN-95-00867

San Juan, Puerto Rico, a 30 de junio de 1997

Panel integrado por su Presidente, Juez Angel F. Rossy García
y los Jueces José M. Aponte Jiménez y Antonio J. Negroni Cintrón

Negroni Cintrón, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

El Lcdo. Félix A. Pellicier Figueroa, su esposa María del Carmen Tossas Flores y la Sociedad Legal de Gananciales integrada por ambos *("Lcdo. Pellicier"),* apelan ante nos de la Sentencia Sumaria Parcial emitida el 11 de julio de 1995 por el Tribunal de Primera Instancia, Sala Superior de San Juan. Mediante dicho dictamen el foro apelado adjudicó sumariamente a favor y a petición del

Banco Popular de Puerto Rico *("Banco Popular")* los méritos de la demanda que éste había presentado contra el Lcdo. Pellicier procurando el cobro de dinero adeudado y la ejecución de una hipoteca que garantizaba el pago de dicha deuda.

Teniendo jurisdicción para considerar el recurso y después de culminar un largo y contencioso trámite para el perfeccionamiento del mismo, el recurso quedó sometido para nuestro dictamen y resolvemos. Debemos primeramente exponer el trasfondo fáctico y procesal pertinente y necesario para ubicar en correcta perspectiva tanto la controversia que nos corresponde adjudicar como nuestro dictamen.

## I

El 29 de diciembre de 1989, el Lcdo. Pellicier y su esposa suscribieron un pagaré a favor del Banco Popular por la suma principal de $78,400.00, más intereses al 9 5/8 % anual y demás créditos accesorios. En garantía de éste otorgaron también la escritura número 519 de la misma fecha ante la Notario Público Ana María Rodríguez mediante la cual constituyeron una hipoteca voluntaria sobre la siguiente propiedad:

*"---Urbana: Propiedad Horizontal: Apartamiento 9-D. Residencial marcado 9-D en el piso núm. 10 del Condominio Centrum Plaza, localizado en las calles Méjico y Uruguay en Hato Rey, San Juan, Puerto Rico, con un área superficial de 104.43 metros cuadrados, en linderos por el Norte con el lobby y el apartamiento 9-E; por el Sur, con los elementos exteriores del edificio y con área de estacionamiento por el Este, con elementos exteriores del edificio y por el Oeste con el apartamiento 9-C.*

*---Consta de sala, comedor, dos (2) baños, cocina, vestíbulo y balcón. El apartamiento tiene derecho a usar el estacionamiento número 15. Correspondiéndole un porcentaje en los elementos comunes generales de punto cero uno tres ocho dos (.01382 %) por ciento y en los elementos comunes limitados punto cero uno cuatro seis nueve (.01469).*

*---Inscrito al folio 88 del tomo 905 de Río Piedras Norte, finca Núm. 27,100, inscripción 7a, Registro de la Propiedad de San Juan, Sección Segunda."*

El Lcdo. Pellicier incumplió el pago de la deuda, según pactado en el pagaré antes indicado, por lo que el Banco Popular comenzó a realizar varias gestiones de cobro extrajudiciales. El 30 de septiembre de 1992 le envió a éstos por correo certificado una carta mediante la cual le informaba al Lcdo. Pellicier que proximamente se proponían presentar ante el tribunal la correspondiente acción en ejecución de hipoteca por falta de pago.

Cuatro meses después de enviarle esta carta, el 13 de enero de 1993, el Banco Popular presentó ante el tribunal de instancia una demanda de cobro de dinero y ejecución de hipoteca por la vía ordinaria. Alegó esencialmente que el Lcdo. Pellicier había otorgado el pagaré y la escritura de hipoteca de referencia; que ésta había sido inscrita en Registro de la Propiedad; que éstos habían incumplido el contrato de préstamo hipotecario al haber dejado de pagar las mensualidades vencidas **desde el 1 de abril de 1992**, sin que efectuaran pago alguno a pesar de los avisos y las oportunidades concedidas; que el Banco Popular había declarado vencida la totalidad de la deuda y que debido a todo ello procedía que el tribunal ordenara la ejecución de la hipoteca mediante la venta del inmueble gravado.

El Lcdo. Pellicier contestó la demanda el 29 de abril de 1993 en su nombre y en representación de su esposa. En esencia aceptó que había otorgado el pagaré y que eran dueños del inmueble. Negó la validez de los créditos accesorios; la legalidad de la deuda; su obligación de pagar; que la hipoteca estuviese inscrita; que el Banco Popular tuviese el derecho a poseer el pagaré otorgado; que lo poseyera de buena fe y que hubiesen incumplido con su obligación contractual.

Como defensas especiales levantó que el antiguo Banco de Ponce había actuado negligente y abusivamente al permitir que se encubriera a unos funcionarios que actuaron negligentemente y le causaron los daños por los que reclamaba compensación en la reconvención que presentaba; que cuando se aprobó la fusión entre el Banco de Ponce y el Banco Popular el 5 de noviembre de 1990

nació "... *una compensación legal a favor de los aquí demandados y reconvencionistas contra las dos entidades bancarias fusionadas.*"

La confusa redacción de la contestación a la demanda y reconvención presentada por el Lcdo. Pellicier dificulta su comprensión, pero deducimos, en síntesis, que éstos le reclamaron al Banco Popular compensación por los daños y perjuicios que le causó el que funcionarios del antecesor del Banco Popular, el Banco de Ponce, ayudaran o permitieran que Josefina Sánchez Pérez, empleada del Lcdo. Pellicier que antes trabajó para el Banco de Ponce, alterara y cambiara cheques alegadamente pertenecientes al Lcdo. Pellicier o bajo la custodia de éste. Resumiendo, el Lcdo. Pellicier expuso en su contestación y reconvención que como el Banco de Ponce le era responsable tanto por el reembolso del dinero en cheques y giros como por los daños sufridos, desde noviembre de 1990, fecha en que el antiguo Banco de Ponce se fusionó con él, el Banco Popular le responde al Lcdo. Pellicier por esos daños que hasta ese momento el Banco de Ponce le era responsable. Indicó, además, que como desde el 2 de febrero de 1990 hasta el 16 de marzo de 1992 ellos le pagaron al Banco Popular la suma de $21,992.00 en cumplimiento de su obligación contractual hipotecaria, de esa suma el Banco Popular sólo tenía derecho a recibir $7,569.99. Razonó que debido al alegado derecho a la compensación por los daños y perjuicios que el Lcdo. Pellicier reclama, en el momento en que se inició el cobro y ejecución de la deuda hipotecaria, el Lcdo. Pellicier no le debía suma alguna al Banco Popular y que, por el contrario, el Banco Popular le adeudaba a ellos la suma de $14,423.00. En adición a lo anterior y en su reconvención el Lcdo. Pellicier reclamó compensación por la alegada ilegalidad y abuso de la acción en cobro de dinero y ejecución de hipoteca que el Banco Popular instó por las actuaciones relacionados con dicho trámite que no es necesario detallar aquí. El Banco Popular contestó la reconvención y negó que fuese responsable de las reclamaciones formuladas en ésta.

Entablada la controversia, las partes iniciaron el descubrimiento de prueba correspondiente. En Conferencia sobre el Estado de los Procedimientos celebrada el 15 de noviembre de 1993, el tribunal de instancia aceptó que las controversias de la demanda y de la reconvención podían considerarse separadamente. Luego de más de un año de litigación, el Banco Popular presentó una moción solicitando que se dictara sentencia sumaria para que se adjudicaran los méritos de la demanda. En apoyo de ésta, incluyó fotocopia del pagaré original, de la escritura de hipoteca y certificación registral. En autos ya obraba una declaración jurada de un oficial del Banco Popular acreditando el monto de la deuda y que el Lcdo. Pellicier no había cumplido con su obligación contractual.

El Lcdo. Pellicier presentó una oposición a la moción de sentencia sumaria y no controvirtió los hechos pertinentes para dilucidar la procedencia de la reclamación formulada en la demanda, según se solicitaba en la moción de sentencia sumaria. Acompañó esta moción con una declaración jurada suya y copia de los cheques y giros que alegadamente fueron alterados y cambiados por su empleada. Nuevamente alegó, en síntesis que tenía derecho al treinta por ciento (30%) de esa suma; que el Banco Popular se la adeudaba y que debido a ello y a que las reclamaciones eran mutuamente excluyentes no le adeudaba suma alguna al Banco Popular. Afirmó que no podía establecer que existiera controversia en cuanto a los hechos materiales relacionadas con la demanda.

Luego de varios incidentes procesales posteriores y las inhibiciones voluntarias de dos juezas del tribunal de instancia, se asignó un nuevo juez para atender el pleito. Según surge de la minuta del 9 de agosto de 1994 y por lo confuso de sus escritos, el tribunal le concedió quince (15) días para presentar nuevas alegaciones para que se incorporaran a su oposición, advirtiéndole que sometidas éstas, dicho foro dispondría de la moción de sentencia sumaria pendiente.

En un escrito posterior, el Lcdo. Pellicier enmendó las defensas especiales y su reconvención. En éste levantó por primera vez varias defensas cuya comprensión resulta difícil debido a la pobre y confusa redacción del escrito en el que el Lcdo. Pellicier mezcla las defensas con argumentos de hechos y de derecho. En el escrito se aduce por primera vez que el Banco Popular no había cumplido con la Cláusula 18 de la escritura de hipoteca voluntaria al enviarle una carta de aviso que no cumplió con los requisitos exigidos por dicha cláusula. Incluida indirectamente en su señalamiento estaba la solicitud de que se desestimara la demanda por esta razón.

Así las cosas, el tribunal de instancia dictó sentencia sumaria parcial en lo que respecta a la demanda en cobro de dinero y ejecución de hipoteca declarándola con lugar. Señaló vista en su fondo

para el 19 de enero de 1996 en cuanto a la reconvención en daños y perjuicios. El Lcdo. Pellicier solicitó la reconsideración de esa sentencia, sin éxito alguno. Procedió entonces a presentar el recurso apelativo que nos ocupa.

## II

En su recurso, el Lcdo. Pellicier le imputa al tribunal de instancia la comisión de los siguientes errores:

*"(A) El Honorable Tribunal de Primera Instancia erró al dictar la Sentencia Sumaria Parcial sin una apreciación general de los hechos del caso, de la prueba y planteamientos de derecho ofrecidos por la parte demandada-apelante.*

*(B) El Honorable Tribunal de Primera Instancia erró al dictar una Sentencia Sumaria Parcial que viola el Debido Procedimiento de Ley, la Igual Protección de las Leyes, y violación de derechos de propiedad y derechos civiles de los demandados-apelantes."*

Por estar íntimamente relacionados ambos errores, los discutiremos conjuntamente.

### -A-

La Regla 36.3 de las de Procedimiento Civil, 32 L.P.R.A. Ap. III, ■ requiere que, de ordinario, se presente una moción al efecto que promueva una en oposición, de modo tal que el juzgador pueda analizar concienzudamente tanto ésta como sus anejos para determinar si existe controversia de peso sobre los hechos pertinentes necesarios para determinar la procedencia del remedio solicitado por la parte promovente. Si existe controversia debe denegarse la solicitud de sentencia sumaria. *Cuadrado Lugo y Otros v. Santiago Rodríguez y Otros,* 126 D.P.R. 272 (1990); *Corporation of the Presiding Bishop v. Purcell,* 117 D.P.R. 714 (1986).

El promovente está obligado a establecer la inexistencia de una controversia real sobre todo hecho material y pertinente que a la luz del derecho sustantivo aplicable justificaría una sentencia a su favor como cuestión de derecho. *Roth v. Lugo,* 87 D.P.R. 386 (1963). La parte promovida debe entonces rebatir la contención del primero mediante declaraciones juradas o documentación adicional que apoye su posición, aunque no hacerlo no significa necesariamente que automáticamente se emitirá un dictamen sumario en su contra. *Corp. of the Presiding Bishop v. Purcell, ante; Flores v. Municipio de Caguas,* 114 D.P.R. 521 (1983). Así las cosas, el tribunal deberá (1) analizar los documentos que acompañan la moción solicitando la sentencia sumaria y los documentos incluidos con la moción en oposición y aquellos que obren en el expediente del tribunal y (2) determinar si el oponente controvirtió algún hecho material o si hay alegaciones de la demanda que no han sido controvertidas o refutadas en forma alguna por los documentos.

No deberá dictar sentencia sumaria cuando existen hechos materiales controvertidos, existen alegaciones afirmativas en la demanda que no han sido refutadas, surge de los propios documentos que se acompañan con la moción una controversia real sobre algún hecho material o cuando como cuestión de derecho no procede. *PFZ Properties, Inc. v. General Accident,* Opinión del 7 de septiembre de 1994, **94 J.T.S. 116.** Si los hechos no están en controversia y el pleito sólo presenta una cuestión de derecho, el tribunal puede disponer del asunto mediante sentencia sumaria. Por regla general, la parte que intenta derrotar una solicitud de sentencia sumaria debe presentar contradeclaraciones juradas y contradocumentos que pongan en controversia los hechos presentados por el promovente. *Tello, Rivera v. Eastern Airlines,* 119 D.P.R. 83 (1987).

Por otro lado, la Regla 43.5 de las de Procedimiento Civil, 32 L.P.R.A. Ap.III, dispone que *" [c]uando un pleito comprende más de una reclamación, ya sea mediante demanda, reconvención, demanda contra coparte o demanda contra tercero o figuren en él partes múltiples, el tribunal podrá dictar sentencia final en cuanto a una o más de las reclamaciones o partes sin disponer de la totalidad del pleito, siempre que concluya expresamente que no existe razón para posponer dictar sentencia sobre tales reclamaciones hasta la resolución total del pleito, y siempre que ordene expresamente que se registre sentencia."* Esta regla autoriza que se dicte una sentencia parcial final en casos sobre reclamaciones múltiples siempre y cuando mediante dicho dictamen se dispone de la totalidad de una o más de las reclamaciones, *Díaz v. Navieras de P.R.,* 118 D.P.R. 297 (1987), aunque

no termine la totalidad del pleito. *Camaleglo v. Dorado Wings, Inc.,* 118 D.P.R. 20 (1986).

La Regla 36.3 de Procedimiento Civil, 32 L.P.R.A. Ap. III, es un instrumento procesal que permite que el tribunal sumariamente dicte sentencia parcial final respecto a la totalidad de una reclamación separable de las restantes que pueda incluir un pleito. *Camaleglo v. Dorado Wings, Inc.,* 118 D.P.R. 20 (1986).

**-B-**

A la luz de esta perspectiva procesal, examinemos la controversia ante nos. No es difícil percatarse que el pleito entre el Banco Popular y el Lcdo. Pellicier incluye dos reclamaciones: Por un lado, la acción en cobro de dinero y de ejecución de hipoteca instada por el Banco Popular contra el Lcdo. Pellicier y, por otro, la acción de daños y perjuicios que éste instó contra el Banco Popular. Un análisis cuidadoso y desapasionado de las alegaciones y múltiples escritos que obran en autos revela que la acción que contra el Lcdo. Pellicier presentó el Banco Popular en cobro de dinero y ejecución de hipoteca es una claramente separada e independiente de la acción por daños que el Lcdo. Pellicier instó en su reconvención.

La reclamación de la demanda nace del préstamo con garantía hipotecaria que el Banco Popular le concedió al Lcdo. Pellicier y del incumplimiento de los pagos del préstamo, según estos se acordaron en el pagaré suscrito por éste y cuyo cumplimiento quedó garantizado mediante la hipoteca constituida sobre el inmueble perteneciente al Lcdo. Pellicier. En términos sencillos, la acción del Banco Popular exige el cumplimiento específico de los términos del pagaré y la escritura de hipoteca, toda vez que habiendo el Lcdo. Pellicier obtenido del Banco Popular cierta suma de dinero en calidad de préstamo con el compromiso de pagárselo a éste en mensualidades, al incumplir con los plazos pactados debe ejecutarse la hipoteca sobre el inmueble perteneciente al Lcdo. Pellicier, vendiéndola en pública subasta para acreditárselo al balance acelerado de la deuda impagada, de conformidad con los términos del pagaré y el contrato de hipoteca.

Ciertamente, la reclamación formulada por el Lcdo. Pellicier en su reconvención no surge del mismo acto o evento que motivó la reclamación del Banco Popular. La reclamación del Lcdo. Pellicier está amparada en la alegada obligación extracontractual al tenor de lo dispuesto en el Artículo 1802 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 5141, del Banco de Ponce. Como hemos antes indicado, el Lcdo. Pellicier le achaca a dicho banco el haber permitido negligentemente que su empleada alterara y cambiara allá para 1987 unos cheques o giros pertenecientes o cuya posesión obtuvo el Lcdo. Pellicier como parte de sus gestiones de cobro en beneficio de un cliente suyo. Toda vez que el Banco Popular adquirió al Banco de Ponce o se fusionó con éste, el Lcdo. Pellicier sostiene que el Banco Popular asumió la responsabilidad que con él tenía el anterior Banco de Ponce.

Como puede apreciarse, ambas reclamaciones son independientes una de la otra. La acción del Banco Popular y la del Lcdo. Pellicier son distintas por su propia naturaleza. No dependían ni requerían de la litigación de la otra para que se ventilaran y adjudicaran los méritos que cada acción pudiese tener. Ello así y de acuerdo a la normativa antes señalada, el tribunal de instancia podía dictar sentencia parcial de conformidad con lo dispuesto en las Reglas 36.3 y 43.5 de las de Procedimiento Civil, 32 L.P.R.A. Ap. III.

En nada altera esa realidad procesal, el que el tribunal de instancia le permitiera al Lcdo. Pellicier presentar su reconvención, pues ello está autorizado por lo preceptuado por la Regla 11.2 de Procedimiento Civil, 32 L.P.R.A. Ap. III. Esta dispone que *"[u]na alegación podrá exponer como reconvención contra una parte adversa cualquier reclamación que no surja del acto, omisión o evento que motivó la reclamación de dicha parte."* Como puede notarse de su redacción, la reconvención del Lcdo. Pellicier expone una reclamación que no surge del acto, omisión o evento que motivó la reclamación del Banco Popular. La procedencia de la ejecución de la hipoteca se podía determinar sin que se adjudicaran los méritos que pudiera tener la reconvención.

Por otro lado y contrario a lo que sin razón ha estado postulando el Lcdo. Pellicier, el que el Banco Popular, como sucesor del Banco de Ponce, le pueda ser responsable extracontractualmente por las pérdidas o los daños y perjuicios que le causó el que su empleada le alterara y cambiara cheques o

giros propiedad o bajo la custodia del Lcdo. Pellicier, no altera la independencia o separabilidad de las causas.

El Lcdo. Pellicier alega que desde 1987 tenía un crédito a su favor oponible a la demanda en cobro de dinero y ejecución de hipoteca instada por el Banco Popular, pero no tiene razón. La figura de la compensación tiene lugar cuando dos personas, por derecho propio, son recíprocamente acreedoras y deudoras la una con la otra. Artículo 1149 del Código Civil, 31 L.P.R.A. sec. 3221. La razón de ser de la compensación la expone Diez-Picazo en los siguientes términos:

*"El fundamento de la compensación es muy sencillo. Se encuentra en la conveniencia de simplificar las operaciones de cumplimiento, sustituyendo dos o más pagos por uno sólo mediante una simple operación aritmética....Sin embargo, la raíz última de la compensación, desde el punto de vista jurídico, no se encuentra tanto en la simplificación de las operaciones, ni de la evitación de los medios de pago, cuanto en el carácter objetivamente injusto y desleal del comportamiento de quien reclama un crédito siendo al mismo tiempo deudor del demandado, pues contrario a la buena fe es pedir aquello mismo que ha de ser restituido (dolo facit qui petit quod rediturus est)."* L. Diez-Picazo, *Fundamentos del Derecho Civil Patrimonial,* Madrid, Ed. Tecnos, 1979, págs. 642-643.

Para que proceda la compensación, el Artículo 1150 del Código Civil, 31 L.P.R.A. sec. 3222, establece los siguientes requisitos:

*"(1) Que cada uno de los obligados lo esté principalmente, y sea a la vez acreedor principal del otro.*

*(2) Que ambas deudas consistan en una cantidad de dinero, o siendo fungibles las cosas debidas, sean de la misma especie y también de la misma calidad, si ésta se hubiese designado.*

*(3) Que las deudas estén vencidas.*

*(4) Que sean líquidas y exigibles.*

*(5) Que sobre ninguna de ellas haya retención o contienda promovida por terceras personas y notificada oportunamente al deudor."*

Un cuidadoso estudio de las alegaciones y de los innumerables escritos que ha presentado el Lcdo. Pellicier ciertamente demuestran que la responsabilidad que éste alega que el Banco Popular tiene con él, no cumple con estos requisitos. La deuda que el Lcdo. Pellicier alega que el Banco Popular tiene con él no está vencida; no es líquida o exigible, sobretodo, porque ningún tribunal ha dictaminado que el Banco Popular adeuda dicha suma. El Lcdo. Pellicier sólo cuenta con una alegación que incluye una reclamación contra el Banco Popular cuya procedencia no ha sido adjudicada. Para que el Lcdo. Pellicier pueda aseverar con propiedad que el Banco Popular le adeuda alguna suma por los alegados daños y perjuicios que sufrió, el tribunal tiene que determinarlo así. Depende del dictamen que en su día pueda recaer con relación a la reclamación por el incumplimiento extracontractual que le imputa al Banco Popular en su reconvención. Hasta que ello suceda, la deuda es una mera alegación contingente.

Tal y como lo concluyó el tribunal de instancia, el crédito que el Lcdo. Pellicier alega tener es el conocido como crédito litigioso. Se considera litigioso un crédito desde que se contesta la demanda relativa al mismo. Artículo 1425 del Código Civil, 31 L.P.R.A. sec. 1425. Se reputa como litigioso aquel crédito que puesto en pleito, no puede tener realidad sin previa sentencia que lo declare, o sea aquél que está en duda y se disputa, aquél en el que los derechos son inciertos. *Consejo de Titulares del Condominio Orquídeas A, B y C, etc. v. Corporación de Renovación Urbana y Vivienda, etc.,* Op. del 16 de febrero de 1993, **93 J.T.S. 25.**

En las circunstancias descritas y toda vez que ningún tribunal ha adjudicado que el Banco Popular le adeude suma de dinero al Lcdo. Pellicier, no existe duda alguna en cuanto a que éste no puede oponer la figura de la compensación contra el Banco Popular para derrotar la acción en cobro de dinero y ejecución de hipoteca. El crédito que alega tener el Lcdo. Pellicier es uno incierto y

contingente a que pueda obtener un dictamen favorable en cuanto a su reconvención.

-C-

Por otro lado, el Lcdo. Pellicier postula que la deficiencia de la carta de aviso que el Banco Popular le envió el 30 de septiembre de 1992 por correo certificado incumple con lo acordado en la Cláusula 18 de la escritura de hipoteca voluntaria. Aunque el Lcdo. Pellicier no abunda o discute con precisión cuál sería el efecto de la alegada deficiencia, estimamos que éste indirectamente sostiene que debido a ello la demanda del Banco Popular resulta improcedente, ilegal y violatoria de sus derechos constitucionales.

La parte pertinente de la Cláusula 18 de la escritura de hipoteca prescribe lo siguiente:

*"... el Prestador, antes de acelerar su vencimiento, enviará por correo certificado al Deudor, según dispuesto en el párrafo 14 de la presente, especificando lo siguiente: (1) el incumplimiento; (2) la acción requerida para subsanar dicho incumplimiento; (3) la fecha límite, que no será anterior a treinta (30) días a partir de la fecha de envío por correo de la notificación al Deudor, antes de la cual dicho incumplimiento deberá ser subsanado; y (4) una indicación de que dejar de subsanar dicho incumplimiento en o antes de la fecha límite especificada en la notificación podrá resultar en la aceleración del vencimiento de las sumas garantizadas por esta hipoteca, ejecución por la vía judicial y la venta de la propiedad. La notificación informará al Deudor, además de su derecho a rehabilitación con posterioridad a la aceleración y de su derecho a aseverar la inexistencia de incumplimiento o cualquier otra defensa del Deudor a la aceleración o ejecución. Si el incumplimiento no es subsanado en o antes de la fecha límite especificada en la notificación, el Prestador podría declarar todas las sumas garantizadas por esta hipoteca inmediatamente vencidas y pagaderas sin necesidad de requerimiento adicional y podrá ejecutar la hipoteca por la vía judicial."*

La carta a la que se refiere el Lcdo. Pellicier es una que un abogado del Banco Popular le envió por correo certificado el 30 de septiembre de 1992 y que indicaba lo siguiente:

*"El Banco Popular nos refirió para el cobro por la vía judicial el préstamo de referencia, el cual está garantizado con una hipoteca sobre su propiedad. El referido préstamo ha sido declarado vencido por falta de pago y el mismo es líquido y exigible.*

*Nos proponemos radicar proximamente la correspondiente acción de ejecución de hipoteca ante el Tribunal Superior. La culminación de esta acción es la venta en pública subasta de su propiedad para satisfacer su obligación con el Banco.*

*Para cualquier información adicional urge se comunique con la Sección de Cobros del Banco Popular, localizada en el Centro de Préstamos Hipotecarios, Avenida Ponce de León 153, Hato Rey o al teléfono 758-1989 para que se ponga al día en sus pagos y sea reinstalado nuevamente su préstamo, previo el pago de las cantidades adeudadas a esta fecha, incluyendo los cargos por demora y cualesquiera otros gastos en que haya habido que incurrir como consecuencia de su incumplimiento.*

*Esa situación requiere su inmediata atención.*

*Cordialmente,*

*JUAN H. SOTO SOLA"*

La carta de referencia le fue enviada al Lcdo. Pellicier por correo certificado y éste no ha negado que la recibiera. Aunque el abogado del Banco Popular no siguió estrictamente el lenguaje de la Cláusula 18 de la escritura de hipoteca voluntaria, la carta le informó al Lcdo. Pellicier sobre su incumplimiento al indicar que por falta de pago se había acelerado el vencimiento de la deuda; le informó lo que tenía que hacer para subsanar el incumplimiento que se le imputaba; aunque no le indicó que se le estaba concediendo un término mínimo de treinta (30) días para que subsanara el incumplimiento, la realidad indiscutible es que el Banco Popular pospuso por cerca de cuatro meses después de enviar la carta la presentación de la acción judicial que nos ocupa y sin que el Lcdo.

Pellicier realizara pago alguno para subsanar su incumplimiento; aunque le informó que había acelerado el vencimiento de la deuda, la carta le indicó que el préstamo se instauraría si satisfacía los pagos adeudados con posterioridad a la aceleración de la deuda, lo que implica que en realidad no había acelerado el vencimiento de la deuda. Finalmente, la carta le informó de la inminencia de la presentación de la demanda para ejecutar la hipoteca ante el incumplimiento, si el Lcdo. Pellicier no actuaba prontamente y le incluyó la dirección y el teléfono al que debía llamar para que se pusiera al día en sus pagos y su préstamo fuese reinstalado nuevamente.

Ciertamente la carta de referencia no le informó al Lcdo. Pellicier de su derecho a aseverar la inexistencia de incumplimiento o cualquier otra defensa suya a la aceleración o ejecución, pero de los autos ante nos se desprende que al recibir la carta, el Lcdo. Pellicier no sólo no cuestionó las deficiencias que posteriormente señaló, sino que mediante carta del 7 de octubre de 1992, unos siete (7) días después que el Banco Popular le enviara su aviso, levantó las defensas que creía tener, en esa etapa extrajudicial, contra la aceleración y la ejecución de hipoteca proyectada. En ésta le informó al abogado del Banco Popular de la reclamación que en relación a los cheques y giros alterados y cambiados por su empleada en el Banco de Ponce tenía originalmente contra éste y posteriormente contra el Banco Popular. Le incluyó copia de las cartas que, según indicaba, él había antes enviado a los presidentes de ambas instituciones bancarias. Expuso además que *"... de los $6,746.66 que saldarían todo lo adeudado hasta hoy que serían $6,078.80 (ya que son 7 meses atrasados) están los daños y perjuicios, sufrimientos, mentales y morales y mi crédito que con orgullo mantenía."* En esta oración, el Lcdo. Pellicier implícitamente aceptó su incumplimiento y propuso por vez primera la compensación que el Banco Popular le ha rechazado consistentemente.

En esas circunstancias, concluimos que la carta que el 30 de septiembre de 1992 el Banco Popular le envió al Lcdo. Pellicier cumplía sustancialmente con los requisitos de la Cláusula 18 de la escritura de hipoteca y la única parte de la carta que no cumplió con lo requerido, no perjudicó de forma alguna al Lcdo. Pellicier. Como abogado demostró que conocía de su derecho a cuestionar el incumplimiento que se le imputaba y a plantear las defensas que en su opinión podía oponer a la ejecución. Así lo hizo al enviar su carta del 7 de octubre de 1992.

Ahora bien, el Lcdo. Pellicier no ha discutido o demostrado que las deficiencias de la carta del 30 de septiembre de 1992 que el Banco Popular le envió al Lcdo. Pellicier constituyan violación al debido proceso de ley o a derecho constitucional alguno del Lcdo. Pellicier. Ningún fundamento hemos encontrado nosotros que avale semejante hipótesis. Tampoco ha discutido o demostrado que el trámite seguido haya violado algún estatuto federal aplicable.

**-D-**
Una última consideración. Según los propios apéndices que el Lcdo. Pellicier incluyó para perfeccionar su recurso, el 13 de octubre de 1992 el abogado del Banco Popular contestó la carta que con fecha de 7 de octubre de 1992 el Lcdo. Pellicier le cursó en respuesta a la del primero del 20 de septiembre de 1992. En ésta le informó que le estaba refiriendo su carta al Banco Popular. Esta institución le contestó la misma mediante comunicación del 21 de octubre de 1992 en la que se reiteraron en una oferta transaccional por la suma de $4,485.90 que mediante carta del 2 de enero de 1991 el Banco de Ponce le había hecho al Lcdo. Pellicier para finiquitar su reclamación por los cheques y giros que su empleada había alterado y el Banco de Ponce había cambiado. En dicha comunicación lo invitaron a que visitara las oficinas del Banco Popular. El Lcdo. Pellicier optó por contestar esta carta mediante una suya del 4 de febrero de 1993 en la que rechazó nuevamente la oferta que se le hacía y reiteró su reclamo de que el Banco Popular le pagara una suma mayor de $22,488.87, según sus cálculos.

Esos apéndices demuestran que desde el 30 de diciembre de 1987, el Lcdo. Pellicier ha estado infructuosamente tratando de que el Banco de Ponce, en primer término, y el Banco Popular, en segundo, le paguen la suma a la que él entiende tiene derecho, aunque desde el 2 de enero de 1991 el Banco de Ponce le había rechazado tal reclamo llegando hasta indicarle que desconocían como el Lcdo. Pellicier llegaba a la cifra que reclama.

No nos corresponde en este recurso dilucidar si el Lcdo. Pellicier tiene razón o no en su reclamo eso es asunto que está planteado en su reconvención. Tampoco nos corresponde determinar si su

reclamación está prescrita o no y si sus cartas interrumpieron o no el término prescriptivo de la reclamación que incluyó en la reconvención.

El Banco Popular instó la acción en cobro de dinero y ejecución de hipoteca de conformidad con el derecho que le confiere el artículo 201 de la Ley Hipotecaria, 30 L.P.R.A. sec. 2701. Esta autoriza que en el caso en que venza un crédito hipotecario, en todo o en parte, se puede ejecutar la hipoteca.

De los autos no surge controversia alguna en cuanto a que el Lcdo. Pellicier incumplió con su obligación de pago según pactado en el pagaré hipotecario y el contrato de hipoteca elevado a escritura pública e inscrito en el Registro de la Propiedad. El Banco Popular acompañó su moción solicitando sentencia sumaria con una fotocopia del pagaré original, de la escritura de hipoteca y una certificación registral. En autos ya obraba la declaración de un oficial del Banco Popular acreditando el incumplimiento del Lcdo. Pellicier con su obligación de pago, el balance adeudado y el monto de la obligación del Lcdo. Pellicier que justificaba la concesión del remedio solicitado por el Banco Popular.

El Lcdo. Pellicier no alegó ni estableció la existencia de controversia sustancial sobre los hechos pertinentes para adjudicar los méritos de la acción de cobro de dinero y ejecución de hipoteca. Todo su esfuerzo lo dedicó a tratar de demostrar que tenía una causa de acción por daños y perjuicios contra el Banco Popular, lo que no derrotaba la pretensión de dicha institución bancaria para obtener sentencia.

A pesar de que desde el 2 de enero de 1991, el Banco de Ponce le rechazó su reclamación y le formuló una oferta en transacción, según la propia prueba documental que incluyó en el apéndice, el Lcdo. Pellicier no sólo no entabló una acción judicial para que se dilucidara esa controversia, sino que optó por dejar de pagar voluntariamente su obligación hipotecaria bajo la teoría insostenible en derecho de que el crédito litigioso que dice tener era oponible y podía detener la acción instada por el Banco Popular. Al así proceder, no sólo se equivocó como cuestión de derecho y de estrategia, sino que expuso su propiedad y su crédito a unas consecuencias innecesarias y previsibles.

En esas circunstancias, el Lcdo. Pellicier no derrotó la moción de sentencia sumaria presentada por el Banco Popular. Por consiguiente, el tribunal de instancia no incurrió en los dos errores apuntados por el Lcdo. Pellicier. Actuó conforme a derecho al considerar y adjudicar la reclamación a que se refiere la demanda mediante la sentencia sumaria parcial final apelada. Tampoco abusó de su discreción al separar la reclamación contenida en la demanda y dejar pendiente la dilucidación de aquellas incluidas en la reconvención.

### III

Por los fundamentos antes expuestos, se confirma la Sentencia Sumaria Parcial emitida por el Tribunal de Primera Instancia, Sala Superior de San Juan, que declaró con lugar la demanda en cobro de dinero y ejecución de hipoteca a favor del Banco Popular.

Lo acuerda el Tribunal y lo certifica la Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General

### ESCOLIO 97 DTA 157

1. La moción se notificará a la parte contraria con no menos de diez (10) días de anticipación a la fecha señalada para la vista. Con anterioridad al día de la vista, la parte contraria podrá notificar contradeclaraciones juradas. La sentencia solicitada se dictará inmediatamente si las alegaciones, disposiciones [deposiciones], contestaciones a interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas, si las hubiere, demostraren que no hay controversia real sustancial en cuanto a ningún hecho material y que como cuestión de derecho debe dictarse sentencia sumaria a favor de la parte promovente. Podrá dictarse sentencia sumaria de naturaleza interlocutoria resolviendo cualquier controversia entre cualesquiera partes que sea separable de las controversias restantes. Dicha sentencia podrá dictarse a favor o en contra de cualquier parte en el pleito. (Énfasis nuestro.)